0712

Richard S. LOVERING and Errol Lovering, on behalf of themselves and all other similarly situated property owners in the Seabrook Island Development in the County of Charleston, State of South Carolina, Appellants v. SEABROOK ISLAND PROPERTY OWNERS ASSOCIATION, Respondent.

E. C. M. WALLER and Adelaide Waller, on behalf of themselves and all other similarly situated property owners in the Seabrook Island Development in the County of Charleston, State of South Carolina, Appellants v. SEABROOK ISLAND COMPANY, and Seabrook Island Property Owners Association, Respondents.

(344 S. E. (2d) 862)

Court of Appeals

*J. Randolph Pelzer*, of *Pelzer & Chard, P.A.*, Charleston, *for appellants.*

*Robert H. Hood* and *Alexander M. Bullock*, of *Robert H. Hood & Associates*, Charleston, *for respondent Seabrook Island Co.*

*W. Foster Gaillard*, of *Fishburne & Gaillard*, and *Gedney M. Howe, III*, Charleston, *for respondent Seabrook Island Property Owners Ass'n.*

Heard Feb. 18, 1986.

Decided May 12, 1986.

BELL, Judge:

Richard and Errol Lovering and E. C. M. and Adelaide Waller commenced these class actions to challenge the validity of a special assessment imposed on owners of property at Seabrook Island by the Seabrook Island Property Owners Association. The Loverings have refused to pay the special assessment. The Wallers paid the assessment under protest and seek a refund. The Wallers sued both the Association and the Seabrook Island Company, the developer of Seabrook Island. The Company was sued on the theory that it controls the Association through majority control of the Association's Board of Directors. All parties moved for summary judgment in the circuit court. The court granted summary judgment to the Association and the Company. The Loverings and the Wallers appeal. We reverse.

The Association is a nonprofit corporation organized under the laws of South Carolina. Its members are every lot owner and every owner of an apartment under a horizontal property regime within the Seabrook Island development. The purpose of the Association is to preserve the values and

amenities of the subdivision of Seabrook Island, to maintain streets, open spaces, and other common facilities, and to engage in other activies of mutual benefit to property owners on Seabrook Island. The Company is the developer of the Seabrook Island subdivision. In January 1983 the Company owned 187 of 1791 voting lots in the subdivision.

Every deed within the subdivision is subject to certain protective covenants. One such covenant provides:

> Each lot and lot owner in the subdivision shall be subject to an annual maintenance charge based upon the assessed valuation of the premises and any improvements thereon as fixed each year by the Tax Assessor of Charleston County, South Carolina, for County taxation purposes.

Pursuant to this covenant, the Association's by-laws provide:

> The Board of Directors of Seabrook Island Property Owners Association shall have the right and power to subject the property situated on Seabrook Island, except streets, ways, and parks, to an annual maintenance charge.****
>
> After reassessment of all of the property on Seabrook Island by the Tax Assessor of Charleston County, the annual charge may be increased, adjusted or reduced from year to year by the Board of Directors of Seabrook Island Property Owners Association as the needs of the property, in its judgment, may require, based on the dollar [sic] of the assessed valuation of the premises, and any improvements constructed thereon ... as fixed each year by the Tax Assessor of Charleston County, South Carolina, for County taxation purposes.

The annual maintenance charge is placed in a Maintenance Fund to be used by the Association as provided in the by-laws. The by-laws specify that the Maintenance Fund may be used, among other purposes:

> For lighting, improving, and maintaining the streets and dedicated right of way areas maintained for the general use of the owners and occupants of land included in the development.

\*   \*   \*   \*   \*   \*

> For doing any other thing necessary or desirable, in the opinion of the Board of Directors ... to keep the property neat and in good order ... or which in the opinion of the Board of Directors may be of general benefit of [sic] the owners or occupants of the land included in the development.

The by-laws do not empower the Board of Directors to levy any assessments other than the annual maintenance charge. Moreover, the Property Report furnished to each property owner by the Company in connection with the sale of lots specifically states the owner will be obligated to pay an annual maintenance assessment to the Association, but that there are no special assessments.

The protective covenants provide that the beach between the front property lines of ocean front lots and the high water mark will be held by the Company in trust for the benefit of the residents of Seabrook Island. The Property Report states that the ocean beach will be available "at no cost" to lot owners.

The protective covenants also expressly reserve to the Company the right to build bridges, walkways, or fixed spans across any canals, creeks, or lagoons in the subdivision. The Property Report states that streets within the subdivision are to be private and will be maintained by the Company until such time as they are conveyed to the Association, which will thereafter maintain them.

In February 1983, after inspections by an independent engineering firm, two bridges within the subdivision were closed to traffic because they had deteriorated through salt water contact with their steel reinforcing rods. During that same winter, a series of storms caused severe beach erosion.[1] In response to these two problems, the Association's Board of Directors met on March 29, 1983, and unanimously passed

---

[1] The record reflects that Seabrook Island had serious beach erosion problems before the winter of 1982-83. Beach erosion had previously created a danger to the beach cabana owned by the Company. The Company, at its own expense, constructed concrete barriers and rock revetments on the beach in front of the cabana. When erosion endangered front beach lots owned by private individuals and the Company, those individuals and the Company shared the expense of building a revetment.

a motion approving an emergency budget assessment on all Seabrook property owners to finance a beach renourishment project and the rebuilding of the deteriorated bridges. The emergency assessment was not apportioned exclusively on the assessed value of each lot, but was based in part on the Board's calculation of "value received" by each lot owner.

The main question presented by this appeal is whether the Association had authority to levy the emergency budget assessment. We hold that the levying of an emergency budget assessment was an *ultra vires* action by the Association.

A corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and any by-laws made pursuant thereto. *Lurie v. Arizona Fertilizer & Chemical Co.*, 101 Ariz. 482, 421 P. (2d) 330 (1966). Acts beyond the scope of a corporation's powers as defined by law or its charter are *ultra vires*. *United States Rubber Products, Inc. v. Town of Batesburg*, 183 S. C. 49, 190 S. E. 120 (1937). In determining a corporation's powers, its charter is to be construed strictly; any ambiguity in the terms of a corporate charter must operate against the corporation. *Creech v. South Carolina Public Service Authority*, 200 S. C. 127, 20 S. E. (2d) 645 (1942). The specification of certain powers operates as a limitation on such objects as are embodied therein and is an implied prohibition of the exercise of other and distinct powers. *Id.*

A similar rule of strict construction applies to the enforcement of covenants against real property. Covenants purporting to impose affirmative obligations on the grantee are to be strictly construed and not enforced unless the obligation is imposed in clear and unambiguous language which is sufficiently definite to guide the courts in its application. *Beech Mountain Property Owners Association, Inc. v. Seifart*, 48 N. C. App. 286, 269 S. E. (2d) 178 (1980); *cf., Sprouse v. Winston*, 212 S. C. 176, 46 S. E. (2d) 874 (1948) (restrictive covenants are to be construed most strictly against the grantor and liberally in favor of the grantee).

The Association contends it may impose special assessments for any corporate purpose pursuant to the general statement of purposes in its by-laws. The

Association specifically directs our attention to a provision in the by-laws stating that the purpose of the Association is, among other things, "to engage in such other activities as may be to the mutual benefit of the owners of property on Seabrook Island." This provision, it contends, authorizes it to impose special assessments for corporate purposes.

The general statement of corporate purposes relied on is not sufficient, standing alone, to authorize the levying of special assessments on property owners. In order to constitute an enforceable power of assessment in the Association, an assessment provision must: (1) express a sufficiently definite standard by which to measure liability for the assessment; (2) describe with particularity the property to be maintained; and (3) provide an ascertainable standard by which the purpose for which the assessment is levied can be objectively determined. *Beech Mountain Property Owners Association, Inc. v. Seifart, supra; Snug Harbor Property Owners Association v. Curran,* 55 N. C. App. 199, 284 S. E. (2d) 752 (1981). A standard such as "any other thing necessary or desirable in the opinion of the Board of Directors" is too vague to be enforceable.

As a matter of general law, a nonprofit corporation has the power to enforce the collection of dues and charges in accordance with the provisions of its by-laws. *See* Section 33-31-100, Code of Laws of South Carolina, 1976. In this case, however, neither the protective covenants nor the by-laws give the Association power to levy special assessments. The protective covenants and the by-laws authorize the Association to impose only an annual maintenance charge. The annual maintenance charge must be based on the assessed value of the property for tax purposes. It may be adjusted from year to year, but still must be based on assessed value for taxation. The moneys collected are to be used only for the purposes enumerated in the by-laws.

Under the rules of construction outlined above, the specification of the power to levy an annual maintenance charge limits the power of the Association to impose other assessments on property owners within the Seabrook Island subdivision. It operates as an implied prohibition against the levying of special assessments. Therefore, the Association was without power to impose a special as-

sessment, even it its object was to carry out a legitimate corporate purpose. A permissible purpose cannot be accomplished by a prohibitive means. *See Smith v. Cornelius*, 41 W. Va. 59, 23 S. E. 599 (1895).

The Association also argues that the emergency budget assessment is valid as an exercise of its power to make adjustments to the annual maintenance charge. This argument fails for at least two reasons.

First, the by-laws provide that adjustments to the annual maintenance charge are to be made "from year to year," effective each January. The emergency budget assessment was a separate assessment imposed during the year.

Second, adjustments to the annual maintenance charge must be based exclusively on the assessed value of property for tax purposes. The emergency budget assessment was apportioned on a basis other than assessed value for taxation.

From the foregoing, we conclude the emergency budget assessment is clearly a prohibited special assessment, not a permitted adjustment to the annual maintenance charge.

We also find the emergency budget assessment invalid for an additional reason. According to the Association, the beach is an "open space" and the bridges are "streets," both of which may be maintained with funds from the annual maintenance charge. Even if this interpretation is correct, the Property Report provides that "streets within the subdivision . . . will be maintained by the Seabrook Island Company until such time as they are conveyed to the Seabrook Island Property Owners Association which will thereafter maintain them." The terms of the Property Report are contractually binding on the Company in favor of the property owners. *See Correa v. Pecos Valley Development Co.*, 126 Ariz. 601, 617 P. (2d) 767 (1980); *Kniffin v. Colorado Western Development Co.*, 622 P. (2d) 586 (Colo. App. 1980). There is no evidence in the record that the two bridges in question have been conveyed to the Association. Therefore, maintenance of the bridges is the responsibility of the Company, not the Association.

Similarly, the record indicates the beach is owned by the Company, not the Association. The protective covenants provide that the Company will hold the beach in trust for the

benefit of the residents of Seabrook Island, although the Company may deed the beach to the Association to hold subject to the same trust. There is no evidence the beach has been deeded to the Association. Moreover, the record indicates that prior to March 1983 the Company assumed financial responsibility for maintenance of the beach. In addition, the Property Report states the beach will be available at "no cost" to lot owners. Since the Company holds title to the beach on these terms, maintenance of the beach is the responsibility of the Company, not the Association.

In view of our decision regarding the power of the Association to levy a special assessment, we need not address the remaining issues raised by the Loverings and Wallers.

The judgment of the circuit court is

Reversed.

SANDERS, C. J., and GARDNER, J., concur.