0942

SEABROOK ISLAND PROPERTY OWNERS ASSOCIATION, Respondent v. J. Randolph PELZER, Appellant.

(356 S. E. (2d) 411)

Court of Appeals

*John P. Algar,* of *Pelzer & Algar,* of Charleston, *for appellant.*

*Gedney M. Howe, III,* and *David B. Wheeler,* of *Holmes & Thomson,* of Charleston, *for respondent.*

Heard Jan. 19, 1987.

Decided April 27, 1987.

BELL, Judge:

Seabrook Island Property Owners Association instituted this action against J. Randolph Pelzer to collect an unpaid annual assessment for 1984 on two lots owned by Pelzer at Seabrook Island. Pelzer counterclaimed, alleging the assessment was invalid. He also sought a refund of assessments he had previously paid for the years 1976 through 1983, alleging that they, too, were invalid. The Association replied to the counterclaim, raising the defense of estoppel as to past assessments. The circuit court entered judgment for the Association in the sum of $992.25, representing the unpaid 1984 assessment and dismissed Pelzer's counterclaim with prejudice. Pelzer appeals. We affirm in part and reverse in part.

The Association is a non-profit corporation organized under the laws of South Carolina. Its purpose is to preserve the amenties of Seabrook Island and to maintain roads, open spaces, and landscaping for all property owners of the Seabrook Island development. Its membership is composed of all property owners on Seabrook Island.

The Association is governed by protective covenants and bylaws. These authorize it to collect from each property owner an annual maintenance charge. The authority to assess and the method of assessment are prescribed in Paragraph 7 of the protective covenants and in Article VIII, Section 1, of the bylaws. Paragraph 7 of the protective covenants provides, in pertinent part:

> Each lot and lot owner in the subdivision shall be subject to an annual maintenance charge based upon the assessed valuation of the premises and any improvements thereon as fixed each year by the Tax Assessor of Charleston County, South Carolina, for County taxation purposes.

Article VIII, Section 1, of the bylaws states:

> The Board of Directors ... shall have the right and power to subject the property situated on Seabrook Island ... to an annual maintenance charge. * * * * The annual charge may be increased, adjusted or reduced from year to year by the Board of Directors ...

and such maintenance charge may be set at a fixed rate for unimproved property and a fixed rate for improved property. After reassessment of all the property on Seabrook Island by the Tax Assessor of Charleston County, the annual charge may be increased, adjusted or reduced from year to year by the Board of Directors ... based on the dollar [sic] of the assessed valuation of the premises and any improvements constructed thereon ... as fixed each year by the Tax Assessor of Charleston County, South Carolina, for County taxation purposes.

In 1984, Plezer received two bills for maintenance charges on his improved and unimproved lots,. respectively. Although he had paid previous assessments from 1976 through 1983 without protest, he investigated the manner in which the assessments were fixed in connection with litigation for clients challenging special assessments for beach renourishment and bridge repair.[1] As a result of his investigation, Pelzer concluded the Association had been improperly assessing his properties, because the annual maintenance charge was not based upon assessed valuation for taxation purposes as required by the restrictive covenants and by-laws. He, therefore, requested the Association in writing to reassess the property on a valid basis and refused to pay the annual maintenance charges for which he had been billed.

## I.

The Association admits it has been assessing all property owners on a fixed fee basis without regard to the value of their property. Owners of improved lots are assessed at one uniform fee, regardless of the value of their lots; owners of unimproved lots are assessed at another uniform fee, regardless of the value of their lots. The flat fee for improved property for 1984 was $610.00; and fee for unimproved property was $315.00.

The Association defends this flat fee system of assessment as a "business judgment" of the Board of Directors. It

---

[1] Pelzer was the plaintiffs' attorney in *Lovering v. Seabrook Island Property Owners Association,* 289 S. C. 77, 344 S. E. (2d) 862 (Ct. App. 1986), *aff'd as modified,* 291 S. C. 201, 352 S. E. (2d) 707 (1987).

contends a flat fee is authorized under the clause in Article VIII, Section 1, which says "such maintenance charge may be set at a fixed rate for unimproved property and a fixed rate for improved property." We reject this argument.

In *Lovering v. Seabrook Island Property Owners Association,* 291 S. C. 201, 352 S. E. (2d) 707 (1987), our Supreme Court construed the Association's bylaws to provide that "adjustments to the annual maintenance charge are to be based on the assessed value of the property as fixed by the county tax assessor." *Id.* at 203, 352 S. E. (2d) at 708. This is the plain import of both the restrictive covenants and the bylaws.

The authorization to set the maintenance charge at a "fixed rate" does not permit a "flat fee" system of charges. A "rate" is a proportional charge based on value, not a flat fee. A "fixed rate" is a fixed amount of assessment per stated amount of valuation. The "rate" of assessment is the proportion or ratio the maintenance charge bears to the assessed value of the property. Typically, it is expressed as a percentage or millage of the property's assessed value: i.e., so many cents or mills per dollar of value.

Under the bylaws, the Board of Directors may set one rate for improved property and another rate for unimproved property. For example, improved property might be assessed at 1.5% of value while unimproved property is assessed at 1% of value. This does not, however, authorize the Board to fix the annual maintenance charge on some basis other than assessed value for county tax purposes.

The Association argues that its flat fee system of charges is reasonable and was adopted in good faith in the exercise of business judgment. This argument misses the point. Restrictive convenants are contractual in nature and bind the parties thereto in the same manner as any other contract. *Palmetto Dunes Resort v. Brown,* 287 S. C. 1, 336 S. E. (2d) 15 (Ct. App. 1985). Moreover, a corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and by any bylaws made pursuant thereto; acts beyond the scope of the powers so granted are *ultra vires. Lovering v. Seabrook Island Property Owners Association,* 289 S. C. 77, 344 S. E. (2d) 862 (Ct. App. 1986), *aff'd as modified,* 291 S. C. 201, 352

S. E. (2d) 707 (1987). The "business judgment" rule applies to *intra vires* action of the corporation, not to *ultra vires* acts. *See Dockside Association, Inc. v. Detyens*, 291 S. C. 214, 352 S. E. (2d) 714 (Ct. App. 1987).

The restrictive convenants and the bylaws require annual maintenance charges to be based on property values. A system of charges that violates this requirement cannot be defended on the ground that it is a reasonable alternative. The Association is bound to follow the covenants and its own bylaws.

Since the flat fee annual maintenance charge violates the restrictive convenants and the bylaws, we reverse the judgment against Pelzer for the 1984 charges on his two lots.

## II.

In his first counterclaim, Pelzer also sought a refund of all assessments paid in excess of what was due under a proper method of assessment for the years 1976 through 1983. The circuit court held Pelzer was estopped to assert his claim for a refund and dismissed the counterclaim with prejudice. We affirm.

As regards refund of payments from 1976 through 1983, the equities clearly favor the Association. The annual charges for those years were assessed in good faith. Pelzer had constructive knowledge that the maintenance charges were not being assessed in accordance with the restrictive convenants and bylaws. Nevertheless, he acquiesced in the method of assessment and paid the charges. The Association expended the moneys for purposes authorized by the bylaws. Pelzer received the benefit of those expenditures. He cannot now return the benefits or restore the Association to its former position.

For these reasons, the circuit court correctly held Pelzer is estopped to claim a refund. If a party stands by and sees another dealing with his property in a manner inconsistent with his rights and makes no objection while the other changes his position, his silence is acquiescence and it estops him from later seeking relief. *McClintic v. Davis*, 228 S. C. 378, 90 S. E. (2d) 364 (1955).

Affirmed in part, reversed in part.

GARDNER, and SHAW, JJ., concur.