THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Randall J. Trost,       
Respondent,
 
 
 

v.

 
 
 
Sea Mark Tower Property Owners Association, Inc., and The Noble Company 
 of Myrtle Beach,        Defendants,
Of Whom Sea Mark Tower Property Owners Association, Inc., is       
Appellant.
 
 
 

Appeal From Horry County
J. Stanton Cross, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-284
Submitted April 6, 2004  Filed April 
 29, 2004

AFFIRMED

 
 
 
Henrietta U. Golding, of Myrtle Beach, for Appellant.
Randall J. Trost, of Lynchburg, Virginia, for Respondent.
 
 
 

PER CURIAM: Sea Mark Tower Property Owners 
 Association, Inc. (Association) appeals the Master-in-Equitys decision ordering 
 it to reinstall the awnings over the balconies of the penthouse units in the 
 Sea Mark Tower Horizontal Property Regime (Regime). We affirm.
FACTS
The Regime was established in 
 December of 1994 and Sea Mark Tower was built in 1985.  At the time of building 
 construction, awnings were installed over the balconies of the two penthouse 
 units.  
There have been numerous problems with water intrusion 
 into the building for years.  In  1998, the Association hired Law Engineering 
 and Environmental Securities, Inc. to assess the buildings structural integrity 
 and identify the reasons for water leakage problems with the building.  Although 
 the Law Engineering reports revealed water leakage problems from roofs, windows, 
 and the stucco, they did not state that the penthouse awnings were sources of 
 any water leakage.  
Upon receiving the Law Engineering reports, the 
 Association hired Glasstec, a waterproofing company, to correct the water leakage 
 problems.  In order to waterproof the walls and floors of the penthouse balconies, 
 Glasstec removed the awnings and awning structures.  Glasstec refused to provide 
 a warranty on its work if the awning structures were replaced through its waterproofing.  
 Randall Trost, the owner of penthouse unit 1201 demanded the awning be replaced.  
 The Board offered to restore the awnings, but only if Trost took responsibility 
 for any subsequent leakage.  Trost refused.  The awnings have not been restored 
 to their original position.
Trost filed this action against the Association 
 seeking an injunction requiring the Association to replace the awning structures 
 on the balconies and refrain from interfering with the awnings in the future.  
 The master determined the penthouse awnings were limited common elements and 
 their removal by the Association was an ultra vires act.  The 
 master ordered the Association to pay for all expenses and damages from the 
 awnings removal and to pay for their reinstallation.  This appeal followed.  

STANDARD OF REVIEW
Actions for injunctive relief are equitable 
 in nature.  Godfrey v. Heller, 311 S.C. 516, 517, 429 S.E.2d 859, 860 
 (Ct. App. 1993).  On appeal, in an action in equity, tried by a master alone, 
 this court may find facts in accordance with its views of the preponderance 
 of the evidence.  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237, 
 391 S.E.2d 538, 543 (1989); Townes Assocs., Ltd. v. City of Greenville, 
 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).  This broad scope of review, however, 
 does not require this court to disregard the findings of the master, who saw 
 and heard the witnesses and was in a better position to evaluate their credibility.  
 Tiger, 301 S.C. at 237, 391 S.E.2d at 543.
LAW/ANALYSIS
 I.      Limited Common Elements Designation
Appellant argues the master erred in finding the 
 penthouse awnings are limited common elements.  We disagree.  
The master deed of a horizontal property regime 
 should be strictly enforced.  Kneale v. Bonds, 317 S.C. 262, 267, 452 
 S.E.2d 840, 842 (Ct. App. 1994).  Under the Regimes master deed, the Regime 
 consists of units, general common elements, and limited common elements.  The 
 master deed defines each unit as the interior cubic space, fixtures, appliances, 
 furnishings, walls, floors, ceilings, and building material enclosed within 
 the unfinished surface of the structural slab of the ceiling and floor and the 
 unfinished interior surface of the perimeter walls, except for load bearing 
 walls, which are common elements.  The unit also includes all appurtenances 
 which are integral and exclusive to the Unit, including but not limited to lamps 
 attached to the exterior of the Unit . . .  
The master deed does not include such a detailed 
 description of what constitutes a limited common element.  According to the 
 Horizontal Property Act, limited common elements are those common elements 
 which are agreed upon by all the co-owners to be reserved for the use of a certain 
 number of apartments to the exclusion of the other apartments . . .  S.C. Code 
 Ann. § 27-31-20(g) (1991).  Although the master deed does not include a definition 
 of limited common elements, Exhibit B of the master deed provides that the 
 balcony or balconies adjacent to each unit, including the railing adjacent to 
 the same, is a limited common area and is subject to the restrictions and requirements 
 as are set out elsewhere in this master deed.  
We find a strict construction of the master deed 
 supports the masters ruling the awnings are limited common elements. There 
 is no language in the deed to support the Associations contention that the 
 awning is part of the unit. The deed confines the unit to the area within the 
 four walls, ceiling and floor, with the exception of the specifically mentioned 
 exterior lamp.  In contrast, the deed does provide support for Trosts assertion 
 that the awnings are limited common elements by providing the balconies are 
 limited common elements.  It can hardly be said that the balconies are limited 
 common elements, yet the awnings that hang over them are not.  
In addition, the testimony presented during trial 
 supports the masters conclusion that the awnings are limited common elements.  
 Sandy Kelly, the president of the Association testified that in 1999 the Associations 
 Board of Directors had concluded the awnings were common elements of the Regime.  
 Three witnesses involved in the development, design, and construction of Sea 
 Mark Tower also confirmed the awnings were limited common elements.  Kit Christopher, 
 Sea Mark Towers developer and original owner of unit 1201 testified the awnings 
 were intended to be an architectural feature of the building.  George Howell, 
 designer of Sea Mark Tower, testified the awnings were included as part of the 
 original design on construction drawings for the building, and were intended 
 to enhance the overall appearance and attractiveness of the building.  Tom Roe, 
 also an original developer of Sea Mark Tower, Roe testified it was the intent 
 of developers that the awnings be common elements or limited common elements 
 when they were installed.  He declared, I signed the Master Deed.  I was on 
 the original Board.  Ive served as Treasurer and President.  And there was 
 never any question in my mind . . . about the nature of those awnings.  
Based on the above, we find the master properly 
 concluded the penthouse awnings were limited common elements.  
II.      Removal of the Penthouse Awnings  
The Association argues that because the master 
 designated the penthouse awnings to be limited common elements, he erred in 
 finding the removal of the penthouse awnings was beyond the Associations authority.  
 We disagree.
The board of directors of a horizontal 
 property regime may exercise only those powers that are granted to it by law, 
 its master deed, and by any bylaws made pursuant thereto.  See S.C. Code 
 Ann. § § 27-31-100 and 37-31-150 (1991); Seabrook Island Prop. Owners Assn 
 v. Pelzer, 292 S.C. 343, 347, 356 S.E.2d 411, 414 (Ct. App. 1987).  Any 
 act beyond the scope of the powers so granted is ultra vires.  Seabrook, 
 292 S.C. at 347, 356 S.E.2d at 414.  In addition, the allocation of a limited 
 common element may not be altered without the consent of the unit owners whose 
 units are affected. 15A Am. Jur. 2nd Condominiums § 30 (2000).
Section XVIII of the master deed states:

The Association shall have the right to make or cause to 
 be made such alterations, modifications and improvements to the common elements, 
 provided such alterations, modifications or improvements are first approved 
 in writing by the Board of Directors of the Association; provided further that 
 such alterations, modifications or improvements do not adversely affect the 
 value of the Common Elements or Units in the Regime and the cost of such alterations, 
 modifications or improvements shall be assessed as common expenses . . . . [1] 

 Clearly, the master deed does not grant 
 the Association express power to remove the awnings.  As the awnings are limited 
 common elements the Association only has authority under section XVIII of the 
 master deed to alter, modify, or improve them.  The master 
 deed does not grant the Association the power to permanently remove a 
 limited common element.  In fact, Article XX of the master deed mandates that 
 the Association shall be responsible for the maintenance, repair, and replacement 
 of all the common elements.  
Furthermore, Article XVIII of the master deed 
 only allows alterations, modifications, and improvements to common elements 
 that do not adversely affect the value of the common elements or units.  Removing 
 the awnings rendered them completely worthless.  In addition, other common elements 
 and units were adversely affected.  For example, removal of the awnings affected 
 the architectural appearance of the building and the ability of the penthouse 
 units air conditioning systems to adequately cool the units.  Accordingly, 
 the permanent removal of the awnings was in contravention of Article XVIII. 

 The Association asserts it was fulfilling 
 its obligation under the master deed to repair the regime property by deciding 
 to not replace the awnings, which it claims were a source of water intrusion.  

There is no evidence in the record demonstrating 
 the penthouse awnings were a source of water leakage.  The Law Engineering reports 
 did not indicate the penthouse awnings contributed to the water leakage.  A 
 previous Board member, Thomas Roe, testified that he and others attempted to 
 locate water leaks by hosing down the balcony of unit 1201.  However, they were 
 unsuccessful in tracing any leakage to the awnings.  In addition, although Ron 
 Weaver of Glasstec testified the awning framework would jeopardize the integrity 
 of the waterproofing, he acknowledged that proper sealing would have been sufficient 
 to prevent any leakage.  Thus, simple repair and maintenance, which is required 
 under the master deed, was sufficient.  As the master deed must be strictly 
 enforced, we find the Association only had the power to repair and maintain, 
 not permanently remove, the penthouse awnings.  Accordingly, the Association 
 was acting beyond the scope of its authority in deciding against reinstalling 
 the awnings after work was completed on the balconies.
 III.   Business Judgment
Rule   
The Association argues its decision to remove 
 the penthouse awnings is protected by the business judgment rule.  We disagree.  

The business judgment rule only applies to intra 
 vires acts, and not to ultra vires acts.  Seabrook Island Prop. Owners 
 Assn v. Pelzer, 292 S.C. 343, 348, 356 S.E.2d 411, 414 (Ct. App. 1987).  
 The Association was only permitted to act in accordance with the law or the 
 master deed; any act outside the scope of its power was an ultra vires 
 act. See Kuznick v. Bees Ferry Assocs., 342 S.C. 579, 605, 538 
 S.E.2d 15, 28 (Ct. App. 2000).
As we held above, the master deed did not grant 
 the Association the power to permanently remove the awnings.  As the removal 
 of the awnings was an ultra vires act, the Association is not 
 protected by the business judgment rule.   
CONCLUSION  
Based on the above, we find the penthouse awnings 
 are limited common elements.  We further find Appellant was without power to 
 permanently remove the awnings and its decision to remove them was not protected 
 by the business judgment rule.  Accordingly, the decision of the lower court 
 is
AFFIRMED.
HUFF, STILWELL, and CURETON, A.J., concur.

 
 [1] The master deed provides, The General Common 
 Elements and the Limited Common Elements are hereinafter occasionally collectively 
 referred to as the Common Elements.