668 S.E.2d 420

Herwig BAUMANN, Vickie Baumann, Richard J. Dillard, Charles C. Fagan, III, William C. Ferguson, George H. Forrest, Christine L. Forrest, Frederick B. Killmar, Mary C. Killmar, Daniel Milligan, Barbara Milligan, Carol S. O'Neil, Richard O'Neil, Peter Panciera, Patricia C. Wetmore, William E. Whitmer, Mildred Wood, and Catherine Delesky, Plaintiffs,

Of Whom Herwig Baumann, Vickie Baumann, William C. Ferguson, Frederick B. Killmar, Mary C. Killmar, Daniel Milligan, and William E. Whitmer are, Appellants/Respondents,

v.

LONG COVE CLUB OWNERS ASSOCIATION, INC., Respondent/Appellant.

No. 4445.

Court of Appeals of South Carolina.

Heard Sept. 16, 2008.

Decided Oct. 14, 2008.

Thomas Kemmerlin, Jr., of Beaufort and William M. Bowen, of Hilton Head Island, for Appellant/Respondent.

Terry A. Finger, of Hilton Head Island, for Respondent/Appellant.

KONDUROS, J.:

Appellants/Respondents (the Baumanns) appeal the trial court's failure to find Long Cove Club Owners Association, Inc. (Long Cove) violated certain covenants and award them attorney's fees. Additionally, Long Cove appeals the trial court's failure to award it attorney's fees. We affirm.

## FACTS

Long Cove Club Subdivision is a residential subdivision located on Hilton Head Island. In addition to houses, the subdivision includes a golf course and club house. In 2004,

"Amended and Restated General Declaration for Long Cove Club Subdivision and Provisions for the Long Cove Club Owners Association, Inc." (the Covenants) were adopted and recorded, establishing Long Cove as the owners association for the subdivision. All property owners in the subdivision are members of Long Cove. Long Cove is governed by a Board of Directors (the Board), which the members elect.

The Covenants provide:

Where specifically provided herein, the Members, or some specific portion thereof, shall have the power to approve or reject certain actions proposed or require certain actions to be taken by the Association by Referendum including but not limited to the levy by the Association of any Special Assessment, or changes to the Capital Assessments, or the addition or deletion of the functions or services which the Association is authorized to perform. In the event a majority, or more, of the votes actually returned to the Association within the specified time shall be in favor of such action, the Referendum shall be deemed to "pass" and the action voted upon will be deemed to have been authorized by the Members; provided however, that if a higher percentage vote required to "pass" shall be specifically expressed herein, that higher percentage shall control in that instance. The Board of Directors may not undertake any action requiring a Referendum without complying with the provisions hereof. *Members may, upon written application to the Secretary of the Association signed by fifteen percent (15%) or more Members, all of whom are in good-standing with the Association and represent fifteen percent (15%) or more properties, call for a meeting of the membership to require the Association to take certain action by Referendum.* The signed application submitted to the Secretary of the Association must state the issue(s), state the facts pertinent to the issue(s), and recommend alternative resolution(s). The Association shall within 10 days of receipt of such application, provide notice of a meeting to be called in accordance with the above. *The notice of the meeting shall include a statement prepared by the Members requesting the meeting stating the reasons for the meeting.*

(Emphasis added). The Covenants further provide:

The assessment revenue collected from the Capital Assessment and the Initiation Fees shall only be used for capital

purchases, major maintenance, asset replacement, and debt reduction (including lease payments). *Any expenditure from these segregated funds in excess of $150,000.00 for a single item or project must be approved by the Membership either as part of the annual budget or in a separate Referendum.*

(Emphasis added).

Additionally, the Covenants state:

*Section 1. Who May Enforce Generally.* In the event of a violation or breach of any of the affirmative obligations or restrictions contained in this Declaration by any Property Owner or agent of such Property Owner, the Association or any other property owners or any of them jointly and severally shall have the right to proceed at law or in equity to compel a compliance with the terms hereof or to prevent the violation or breach in any event.

*Section 2. Enforcement* In addition to the foregoing, the Association or a Property Owner shall have the right to proceed at law or in equity to compel compliance to the terms hereof or to prevent the violation or breach in any event.

*In the event of any litigation, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs of such litigation.* If the violation is not expeditiously terminated, the Association may engage legal counsel to bring an appropriate injunctive action, including any appeals, to enforce these covenants. *Violators shall be obligated to reimburse the Association in full for all its direct and indirect costs, including but not limited to legal fees incurred by the Association in maintaining compliance with theses covenants.*

(Emphasis added).

In January 2006, the Board approved a nine-year agreement with Club Car Corporation for $450,000, under which Club Car was to provide Long Cove with golf carts. Additionally, in June 2006, the Board approved a proposal for $525,000 from Plantation Interiors, Inc. to refurbish and redecorate the club house. Long Cove did not submit either of these expenditures for member approval at the annual meeting or in a separate referendum.

Ninety-two members of Long Cove submitted a request for a referendum on the two expenditures, which the Board determined to meet the fifteen percent required for referendum. The Board mailed the members information about a "Special Meeting of the Association" regarding the request for the referendum. The mailing included a "Notice of Special Meeting," which stated the purpose of the meeting was "[t]o receive the report from the Inspector of Elections on the results of an election to decide whether action by Referendum shall be required in connection with approval of the 'long-term plan to purchase golf carts and the $525,000.00 Redecorating and Refurbishing Plan.'" The mailing also included a statement from the members who had called for the meeting. In that statement, the members explained they had called for the meeting to approve or disapprove the following two actions undertaken by the Board:

At a Meeting of the Board of Directors on January 23, 2006 approved the execution of a long-term agreement, for approximately $450,000, with Club Car Corp for the purchase and replacement of our golf cart fleet for the period 2006–2014 and;

At an Executive Session of the Board on June 28, 2006 approved the redecoration and refurnishing of the clubhouse at a cost of approximately $525,000.

On September 18, 2006, the Board conducted a referendum. The choices for voters were "Do Not Require a Referendum" and "Require a Referendum." 251 votes were cast for "Do Not Require a Referendum" and 102 votes were cast for "Require a Referendum."

In September 2006, the Baumanns filed a declaratory judgment action seeking to compel Long Cove to comply with the Covenants. Following a bench trial, the trial court found for Long Cove.[1] The Baumanns filed a Rule 59(e), SCRCP, motion for reconsideration and Long Cove applied for attorney's fees. The trial court denied both the motion for recon-

---

1. In the order, the trial court actually stated it was dismissing the Baumann's amended complaint with prejudice. However, in its order denying Long Cove's attorney's fees and the Baumanns' motion for reconsideration, it stated it had entered judgment in favor of Long Cove.

sideration and Long Cove's application for attorney's fees. This appeal followed.

## STANDARD OF REVIEW

"Restrictive covenants are construed like contracts and may give rise to actions for breach of contract." *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 361, 628 S.E.2d 902, 913 (Ct.App.2006). "An action to construe a contract is an action at law reviewable under an 'any evidence' standard." *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). On appeal of an action at law tried without a jury, this court's review is limited to correction of errors at law. *Epworth Children's Home v. Beasley*, 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005). The trial court's findings are equivalent to a jury's findings in a law action. *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 389, 453 S.E.2d 885, 888 (1995). Questions regarding credibility and the weight of the evidence are exclusively for the trial court. *Sheek v. Crimestoppers Alarm Sys.*, 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct.App.1989). "We must look at the evidence in the light most favorable to the respondents and eliminate from consideration all evidence to the contrary." *Id.*

## LAW/ANALYSIS

### I. The Baumanns' Appeal

#### A. Violation of Covenants

The Baumanns argue the trial court erred in refusing to find Long Cove violated the Covenants, based on the Business Judgment Rule asserting the Rule only protects a board when it acts within its authority. Additionally, the Baumanns contend the trial court erred in finding Long Cove had the right to frame the question for the referendum.[2] We disagree.

A corporation can only exercise the powers granted to it by law, its charter or articles of incorporation, and any

---

2. The Baumanns further maintain the trial court erred in finding under the Governance Principles the power to interpret the Covenants is vested in the Board. Because the Baumanns abandoned this argument in their brief, we will not address it. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001) ("South

by-laws made pursuant thereto. *Lovering v. Seabrook Island Prop. Owners Ass'n,* 289 S.C. 77, 82, 344 S.E.2d 862, 865 (Ct.App.1986) *aff'd as modified on other grounds,* 291 S.C. 201, 352 S.E.2d 707 (1987) *overruled on other grounds by* S.C.Code Ann. § 33–31–302. "In a dispute between the directors of a homeowners association and aggrieved homeowners, the conduct of the directors should be judged by the 'business judgment rule' and absent a showing of bad faith, dishonesty, or incompetence, the judgment of the directors will not be set aside by judicial action." *Goddard v. Fairways Dev. Gen. P'ship,* 310 S.C. 408, 414, 426 S.E.2d 828, 832 (Ct.App.1993); *see also Kuznik v. Bees Ferry Assocs.,* 342 S.C. 579, 599, 538 S.E.2d 15, 25 (Ct.App.2000) ("Under the business judgment rule, a court will not review the business judgment of a corporate governing board when it acts within its authority and it acts without corrupt motives and in good faith."). "Acts beyond the scope of a corporation's powers as defined by law or its charter are *ultra vires.*" *Lovering,* 289 S.C. at 82, 344 S.E.2d at 865. The business judgment rule only applies to *intra vires* acts, not *ultra vires* ones. *Kuznik,* 342 S.C. at 605, 538 S.E.2d at 28.

The Covenants required Long Cove to obtain member approval by referendum or in the annual budget for expenditures over $150,000. Long Cove secured the member approval by referendum. Although the notice of the meeting included a statement prepared by the Members giving the reasons for the meeting, Long Cove did not phrase the referendum questions in the manner the Baumanns proposed. Nonetheless, the choices at the meeting amounted to either approving the expenditures or denying the expenditures. Because the majority voted for no referendum, the expenditures were approved by referendum. Accordingly, the record contained evidence Long Cove did not violate the Covenants.

### B. Attorney's Fees

■ The Baumanns contend they were entitled to attorney's fees and costs under the Covenants. We disagree.

---

Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

Generally, attorney's fees are not recoverable unless authorized by contract or statute. *Baron Data Sys., Inc. v. Loter,* 297 S.C. 382, 383, 377 S.E.2d 296, 297 (1989). When a contract authorizes attorney's fees, the award of those fees is left to the discretion of the trial court and will not be disturbed unless an abuse of discretion is shown. *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993). Because the Baumanns did not prevail in proving Long Cove had violated the Covenants, the trial court did not err in failing to award them attorney's fees.

## II. Long Cove's Appeal

Long Cove argues the trial court erred in failing to award it attorney's fees because the Covenants provided a prevailing party shall be entitled to recover attorney's fees and costs. We disagree.

In *Queen's Grant II,* 368 S.C. at 373–75, 628 S.E.2d at 919–20, this court reviewed covenants containing an attorney's fees clause similar to that in this case. The section of the covenants Greenwood Development relied upon to support its claim for attorney fees and costs provided:

*Enforcement.* Greenwood shall have the right, but shall not be obligated, to proceed at law or in equity to complete compliance to the terms of this Agreement or to prevent violation or breach in any event. Violators shall be personally obligated to reimburse Greenwood in full for all its direct and indirect costs, including, but not limited to, legal fees incurred by Greenwood in maintaining compliance with this declaration, and such obligation shall constitute a lien upon the violator's property in accordance with Section 8–8.

*Id.* at 374, 628 S.E.2d at 920. This court found, "The question presented is whether Queen's Grant may be considered a 'violator' in filing and pursuing its Complaint, primarily seeking prospective declaratory relief." *Id.* The court determined, "The provision allows for the recovery of attorney fees *only* against 'violators' of the covenants. Because Queen's Grant may not be fairly characterized as a 'violator' of the covenants, we affirm the circuit court's denial of Greenwood Development's motion for attorney fees." *Id.* at 375, 628 S.E.2d at 920.

The record contains evidence to support the trial court's decision that the Covenants only provided for attorney's fees for parties who demonstrate the opposing party violated the Covenants. Long Cove did not prove or even allege the Baumanns had violated any Covenants. Accordingly, we affirm the trial court's denial of Long Cove's request for attorney's fees.

## CONCLUSION

Because the evidence in the record supports the finding that the expenditures were approved by referendum, the trial court did not err in finding Long Cove did not violate the Covenants. Additionally, the trial court did not err in failing to award the Baumanns because the Baumanns were not a prevailing party. Moreover, we affirm the trial court's denial of Long Cove's request for attorney's fees because it did not allege the Baumanns had violated the Covenants. Accordingly, the trial court is

**AFFIRMED.**

ANDERSON and WILLIAMS, JJ., concur.