THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Todd E. Taylor, Respondent,

v.

Amar and Kennie Gill Living Trust Dated March 15,
2019; Kennie Lee Miller Gill, Trustee of the Amar and
Kennie Gill Living Trust Dated March 15, 2019; Kenneth
V.L. Miller; and Anna M. Miller, Appellants,

v.

South Beach Village Lagoon Villas, II; Horizontal
Property Regime LVII, Respondents.

Appellate Case No. 2022-000301

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

———————

Unpublished Opinion No. 2025-UP-181
Heard April 2, 2024 – Filed June 4, 2025

———————

**AFFIRMED**

———————

Louis H. Lang, of Callison Tighe & Robinson, LLC, of
Columbia, for Appellants.

Douglas Walker MacKelcan, III, and Skyler Cole
Wilson, both of Copeland, Stair, Valz & Lovell, LLP, of
Charleston, for Respondents South Beach Village
Lagoon Villas, II and Horizontal Property Regime LVII.

Edward Michael Kubec, of Novit & Scarminach, PA, of
Hilton Head Island, for Respondent Todd E. Taylor.

---

**MCDONALD, J.:** This appeal considers an order granting a horizontal property regime's petition to amend its master deed pursuant to the South Carolina Nonprofit Corporation Act despite the opposition of one unit's owners. The co-owners of this unit (Appellants) assert the master-in-equity erred in (1) ignoring the Horizontal Property Act's unanimity requirement with respect to changes in the ownership percentages of certain common elements; and (2) modifying Appellants' property rights as established by the master deed. We affirm.

**Facts and Procedural History**

The Regime, on Hilton Head Island, was established under the Horizontal Property Act (the HPA)[1] by a 1973 master deed of the Sea Pines Plantation Company (the Master Deed); it later incorporated as a non-profit subject to the provisions of the South Carolina Nonprofit Corporation Act (the NCA).[2] The Regime consists of three buildings, and each building contains two individual units. Two units have three bedrooms; four units have two bedrooms. The co-owners of these six units have exclusive property rights to their respective dwelling unit, as well as an undivided interest and common right to share in the Regime's general and limited common elements.

In accordance with the requirements of the HPA, the Master Deed incorporates a plat and plans showing and describing the Regime property, including the individual dwelling units and common elements. Under the Master Deed, the Regime property is defined as having "a total area of 0.77 acres of which 8,071.21 square feet will constitute Dwelling Units, and 25,469.99 square feet will constitute common elements." The dwelling units are described in the Master Deed, with the measurements of the various units identified as follows:

---

[1] S.C. Code Ann. §§ 27-31-10 to -440 (2007 & Supp. 2024).

[2] S.C. Code Ann. §§ 33-31-101 to -1708 (1994 & Supp. 2024).

1. Building #1: This building contains two (2) Dwelling Units (hereinafter referred to as "Villas") and commonly referred to as Villas 1591 and 1592.

2. Building #2: This building contains two (2) Dwelling Units commonly referred to as Villas 1593 and 1594.

3. Building #3: This building contains two (2) Dwelling Units commonly referred to as Villas 1595 and 1596.

. . . .

C. Villas: That the Villas, as shown on the plans of the Property, are composed of four (4) two-bedroom Type A Villas, and two (2) three-bedroom Type B Villas.

1. Two-bedroom Type A Villas: (Units 1591, 1592, 1595, and 1596).  These Villas measure 39.83 feet wide and 36.66 feet deep in their maximum interior dimensions and contain a net interior area of 1,086 square feet.

2. Three-bedroom Type B Villas: (Units 1593 and 1594) These Villas measure 44.83 feet wide and 44 feet deep in their maximum interior dimensions and contain a net interior area of 1,400 square feet.

The Master Deed explains that "Common Elements" of the Regime are comprised of general and limited common elements.  It defines general common elements as Regime property "excluding the limited common elements and Dwelling Units." Limited common elements include the rear and front yards, service areas, and storage components adjacent to the Dwelling Units.  The use of limited common elements is restricted to owners of the adjacent Dwelling Units.

Based on a ratio of assigned individual unit values to the assigned value of the Regime property as a whole, the Master Deed set the proportionate share of unit owners' interests in the general and limited common elements at 15.939% for two bedroom units and 18.122% for three bedroom units.  These percentages also apply to voting rights in the Regime's council of co-owners.  The Master Deed further

provides that "the percentage of the undivided interest in the common elements (both general and limited) established herein shall not be changed except with the unanimous consent of all of the co-owners expressed in an amendment to this Deed duly recorded."

Appellants have owned unit 1595 since 1992. Respondent Todd Taylor has owned unit 1596 since 2009. Over the years, the owners of units 1591, 1594, and 1595 (collectively, the Encroaching Units), have expanded their respective units into the limited common elements without opposition from the Regime.[3] Following each expansion, the unit owners informally adopted a change in ownership percentages based on the expansion and discussed the possible need to amend the Master Deed to adjust maintenance expenses attributable to the Encroaching Units.[4] But the owners have been unable to unanimously agree on the language of such an amendment.

On May 11, 2018, Appellants emailed the other unit owners raising concerns about the Master Deed—stating immediate corrective action was required—and requested that the Regime ask its counsel to begin the amendment process. In 2018 and 2019, the Regime worked with its attorney to draft the amendment and engaged consultants to prepare an updated property survey to address the impacts of the Encroaching Units upon the limited common elements.

In 2019, the Regime's attorney sent owners a proposed consent resolution and amendment to the Master Deed. All owners, other than Kennie Lee Miller Gill and

---

[3] Minutes from the Regime's 1998 annual meeting state, "Mr. Miller reported that he would evaluate the addition that he has added to his villa, in relation to the percentage of ownership of each owner, to insure that he pays his proportionate share of the association[']s expenses. Prior to the mailing of the coupons for the new fiscal year, Mr. Miller will report this to HHPM [the property manager] for adjustment to his percentage of ownership."

[4] A December 2, 1998 memo states, "Although the amount paid by an owner is based on the percentage of ownership established in the Master Deed, the association . . . has agreed to allow Mr. Miller to increase his percentage of ownership to be reflected by the additional square footage that he has added as it relates to the value used to determine the percentage of ownership."

Amar Singh Gill, signed off on the proposed amendment.[5]  From late 2019 through 2020, the Regime attempted to garner Kennie's approval but was unable to do so, and thus, could not effectuate the amendment.

Taylor sued, asserting Appellants expanded Unit 1595, "resulting in an encroachment over Common Elements of approximately 170 square feet" and demanding that the encroaching structure be removed.  Taylor's complaint included causes of action for breach of contract, trespass, conversion, unjust enrichment, and declaratory and injunctive relief.  Appellants filed an amended answer and third-party complaint against the Regime seeking declarations that the Regime had approved their addition and that they hold an enforceable encroachment agreement with the Regime.

The Regime then petitioned for relief under section 33-31-160 of the NCA.  The Regime sought an order requiring a special meeting to approve an amendment to the Master Deed and requested alteration of the unanimous voting requirements of the Master Deed and the HPA.  Taylor joined in the Regime's requests.  Although Appellants joined in the request seeking a special meeting of co-owners to consider and hold a vote on the proposed Master Deed amendment, they opposed the request to alter the unanimous voting requirements.

With the consent of all parties, the case was referred in part to the master-in-equity under Rule 53(b), SCRCP.  Following a hearing, the master granted the Regime's petition.  Appellants filed a Rule 59(e), SCRCP, motion to alter or amend; this motion was denied and Appellants timely appealed.

At the ordered special meeting, the proposed amendment (the Amendment) received 52.183% of the participating co-owners' votes.[6]  Units 1593, 1594 and 1596 voted in favor, unit 1595 voted against, and units 1591 and 1592 were absent and did not vote.  The Amendment corrects the description of Regime property to reflect the current layout of the Dwelling Units and Common Elements, the undivided title and interest of each co-owner in the Common Elements, the proportionate shares in any profits, and the proportionate representation for voting

---

[5] Kenneth V.L. Miller and Anna M. Miller initially agreed to the proposal but later withdrew their consent.

[6] Appellants also submitted a proposed amendment for consideration prior to the special meeting but withdrew their proposal at the meeting.

purposes.  Appellants' previous percentage under the Master Deed—15.939%—increased to 15.995% pursuant to the Amendment.

The Regime then sought an order declaring the Amendment approved by the majority of co-owners "to constitute a valid and lawful amendment to the Master Deed, with the same force and effect as if it complied with all otherwise applicable legal requirements."  The Regime further requested an order directing that "the Master Deed Amendment be filed in the public records of Beaufort County."  These requests have been held in abeyance pending resolution of the appeal.

**Standard of Review and "Escape Valve" Language of the NCA**

Appellants argue a de novo standard of review is proper here.  *See Brock v. Town of Mount Pleasant*, 415 S.C. 625, 628, 785 S.E.2d 198, 200 (2016) ("The interpretation of a statute is a question of law" which the appellate court reviews "without any deference to the court below." (cleaned up)).  By contrast, the Regime asserts a preponderance of the evidence standard of review should apply.  *See Horry County v. Ray*, 382 S.C. 76, 80, 674 S.E.2d 519, 522 (Ct. App. 2009) ("The appellate court's standard of review in equitable matters is [its] own view of the preponderance of the evidence.").  Here, the Regime petitioned for relief, and the parties then:

> consented to a reference to the Master-in-Equity for the purpose of making appropriate findings of facts and conclusions of law and entering temporary and final orders with regard to (1) [the Regime's] Petition For Relief [p]ursuant to S.C. Code § 33-31-160; (2) all summary judgment motions filed by the parties in this action, including those relating to legal claims and (3) all equitable claims alleged and equitable remedies sought by the parties in this action.

Following a hearing on the Regime's petition, the master granted relief "pursuant to S.C. Code § 33-31-160 and the equitable powers of this court."  The master also quoted the "Judicial Relief" provision of the NCA in its order:

> (a) If for any reason it is impractical or impossible for a corporation to call or conduct a meeting of its members, delegates, or directors, or otherwise obtain their consent, in the manner prescribed by its articles, bylaws, or this

chapter, then upon petition of a director, officer, delegate, member, or the Attorney General, the court of common pleas …. may order that such a meeting be called or that a written ballot or other form of obtaining the vote of members, delegates, or directors be authored, in such a manner as the court finds fair and equitable under the circumstances.

(b) The court, in an order issued pursuant to this section, shall provide for a method of notice reasonably designed to give actual notice to all persons who would be entitled to notice of a meeting held pursuant to the articles, bylaws, and this chapter, whether or not the method results in actual notice to all such persons or conforms to the notice requirements that would otherwise apply.  In a proceeding under this section, the court may determine who the members or directors are.

(c) The order issued pursuant to this section may dispense with any requirement relating to the holding of or voting at meetings or obtaining votes, including any requirement as to quorums or as to the number or percentage of votes needed for approval, that would otherwise be imposed by the articles, bylaws, or this chapter.

(d) Whenever practical, any order issued pursuant to this section shall limit the subject matter of meetings or other forms of consent authorized to items, including amendments to the articles or bylaws, the resolution of which will or may enable the corporation to continue managing its affairs without further resort to this section. However, an order under this section may also authorize the obtaining of whatever votes and approvals are necessary for the dissolution, merger, or sale of assets.

(e) Any meeting or other method of obtaining the vote of members, delegates, or directors conducted pursuant to an order issued under this section and that complies with all the provisions of such order, is a valid meeting or

vote, as the case may be, and has the same force and effect as if it complied with every requirement imposed by the articles, bylaws, and this chapter.

§ 33-31-160. The official comment to this provision describes the court's authority as an "escape valve" which permits a corporation to act when it otherwise would be unable. *See id.* Because § 33-31-160 affords the court broad authority and discretion to fashion relief in a manner which the "court finds fair and equitable under the circumstances," we find the main purpose of this lawsuit, and more specifically, the Regime's petition, sounds in equity. *See Fox v. Moultrie*, 379 S.C. 609, 613, 666 S.E.2d 915, 917 (2008) ("In an action in equity, tried with reference to a master, [the appellate court] reviews the evidence and determines the facts according to its own view of the preponderance of the evidence, though it is not required to disregard the findings of the master."). Even so, we recognize that questions of statutory interpretation are subject to a de novo standard of review.

**Analysis**

### I. Unanimity Requirement

Appellants argue the master erred in altering the HPA's unanimity requirement with respect to changes in the Regime ownership percentages of common and limited common elements. We disagree.

Initially, we note the Regime encourages us to affirm on preservation grounds based on its contention that Appellants did not raise their statutory construction arguments with sufficient specificity before the master. But "[e]rror preservation rules do not require a party to use the exact name of a legal doctrine in order to preserve an issue for appellate review." *State v. Brannon*, 388 S.C. 498, 502, 697 S.E.2d 593, 595 (2010). While we recognize neither party used the phrase "statutory construction" or "statutory interpretation" before the master, both Appellants and the Regime presented their respective interpretations of the statutory provisions at issue, and the master ruled on these matters. Accordingly, we find Appellants' challenge is preserved for appellate review.

"The creation of a horizontal property regime is accomplished through compliance with the South Carolina Horizontal Property Act." *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 360-61, 628 S.E.2d 902, 912 (Ct. App. 2006). Section 27-31-60(a), which addresses individual units, provides in pertinent part:

(a) An apartment owner shall have the exclusive ownership of his apartment and shall have a common right to a share, with the other co-owners, in the common elements of the property, equivalent to the percentage representing the value of the individual apartment, with relation to the value of the whole property. This percentage shall be computed by taking as a basis the value of the individual apartment in relation to the value of the property as a whole.

The percentage shall be expressed at the time the horizontal property regime is constituted, shall have a permanent character, and shall not be altered without the acquiescence of the co-owners representing all the apartments of the property.

The master's order granting the Regime's petition recognizes:

The Master Deed requires an amendment in order to lawfully and properly describe the Regime property, dwelling units, common elements, and the rights of the co-owners. All Parties to this Action agree and concede that the Master Deed requires an amendment, and that the Council of Co-Owners and the Board of Administration have a duty to pass an amendment to the Master Deed. I find that the Regime has shown, based on the lengthy history of attempts to amend the Master Deed, the expenses incurred, the discussions and efforts which have taken place since 2018, and the instant lawsuit, that it is impossible or impractical for the Regime to call or conduct a meeting of its members or otherwise obtain their consent in order to vote on a valid amendment to the Master Deed.

The master further found "intervention of the Court is warranted to order a special meeting of the Regime members be called for the purpose of voting on an amendment to the Master Deed under circumstances this Court finds fair and equitable" and "that it is necessary and appropriate to modify the voting requirement for passage of an amendment to the Master Deed." The order directed

the Regime to hold a special meeting within forty-five days for the purpose of voting on the required amendment and provided a structure through which Taylor and Appellants could submit proposed amendments for consideration. The order further stated that at the special meeting, "if a proposed amendment to the Master Deed receives a majority vote, the Court shall order the amendment to constitute a valid and lawful amendment by subsequent order." By joining in the Regime's petition as to these specific items, Appellants concede the master properly ordered the Regime to hold the special meeting to consider proposals and vote on proposed amendments.

However, Appellants challenge the modification of the unanimous voting requirement to a majority vote and argue the master exceeded its authority in contravention of the governing statute. Appellants correctly assert § 27-31-60 of the HPA mandates that ownership percentages in the common elements of Regime property "shall not be altered without the acquiescence of the co-owners representing all the apartments of the property." But we disagree with their contention that the master "had no power to direct, without their consent, a change in the property interests of [Appellants] in the Regime common and limited common areas and the formula by which those interests were calculated." We further disagree with Appellants' assertion that the master "was without authority to direct the adoption of amendments to the [Master Deed] effecting the ownership of the [Appellants] in the common and limited common area elements of the Regime without their consent."

"The goal of statutory construction is to harmonize conflicting statutes whenever possible and to prevent an interpretation that would lead to a result that is plainly absurd." *Hodges v. Rainey*, 341 S.C. 79, 91, 533 S.E.2d 578, 584 (2000). Here, the master did not direct that the Regime adopt any particular form of amendment nor direct the content of proposed amendments to be submitted. Instead, under the "escape valve" authority afforded by § 33-31-160, the master considered the requirements for passage of a long-needed amendment and provided a procedure for amendment proposals. This occurred years after Appellants expanded their own unit to encroach upon certain limited common elements.

Appellants maintain the master's authority under § 33-31-160 of the NCA to dispense with the general voting requirements cannot override the HPA's § 27-31-60 mandate that proportionate ownership percentages "shall not be altered without the acquiescence of the co-owners representing all of the apartments of the property." Although they acknowledge the council of co-owners of a horizontal property regime may incorporate and be subject to the provisions of the NCA, they

argue there is distinction based on the language of § 27-31-90, which permits incorporation "for the purpose of the administration of the property constituted into a horizontal property regime." Appellants contend matters relating to voting and relationships among co-owners fall outside the "administration of the property" and thus are not subject to § 33-31-160's escape valve. We disagree that such matters fall outside the Regime's administration of the property due to the fact that voting to amend a master deed is undoubtedly an action "involved in managing the work of [the] organization." *See* Procedure and Administration, *Black's Law Dictionary* (11th ed. 2019). Even if we were to find that § 33-31-160 so limits the court's relief regarding the administration of Regime property, the relief ordered by the master under the unique circumstances of this case was inextricably intertwined with such administration because it addressed the management and use of the property as well as the management of Regime affairs and voting procedures.

Appellants further argue the power of a court to alter voting requirements under § 33-31-160 is limited by other provisions of the NCA. *See* S.C. Code Ann. § 33-31-301(b) (1976 & Supp. 2023) ("A corporation engaging in an activity that is subject to regulation under another statute of this State may incorporate under this chapter only if incorporation under this chapter is not prohibited by the other statute. The corporation is subject to all limitations of the other statute."); S.C. Code Ann. § 33-31-302(18) (1976 & Supp. 2023) ("Unless its articles of incorporation provide otherwise, every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its affairs including, without limitation, power . . . . to do all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation.").[7] While these provisions address the powers and purposes of a nonprofit corporation and require that such entities act in a lawful manner, we see no restriction upon § 33-31-160's specific

---

[7] The South Carolina Reporters' Comments addressing this subsection provide: "Broad interpretation. It is important to note that the final power, Section 33-31-302(18), gives the corporation the power to do all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation. The purpose of item (18) is to ensure that all of the powers granted in this section are broadly interpreted and that there be no limitation imposed on the powers of any nonprofit corporation. As noted [elsewhere in the Reporters' Comments], this specifically modifies the holdings of *Lovering v. Seabrook Island Property Owners Assoc.*, 289 S.C. 77, 344 S.E. 2d 862 (Ct. App[.] 1986), aff'd. & mod. 291 S.C. 201, 352 S.E.2d 707 (1987)."

grant of authority for a court to provide an escape valve when the administration of the corporation would otherwise be forced to a standstill.

Appellants further contend the language of § 33-31-160 "confines the vote alteration intervention power to the 'percentage of votes needed for approval of the articles, bylaws or [the NCA]'" and does not allow for the alteration of voting requirements or property interests addressed in the Master Deed. But with the proper showing, § 33-31-160(c) confers broad authority upon a court by providing, "The order issued pursuant to this section may dispense with *any requirement relating to the holding of or voting at meetings or obtaining votes*, including any requirement as to quorums or as to the number or percentage of votes needed for approval, that would otherwise be imposed by the articles, bylaws, or this chapter." (emphasis added). Likewise, § 33-31-160(d) allows a court to "authorize the obtaining of whatever votes and approvals are necessary for the dissolution, merger, or sale of assets." For these reasons, we find the master properly granted the Regime's petition, including the necessary modification of the unanimity requirement.[8]

## II.   Property Rights

Appellants next argue the master erred in altering their property rights as established by the Master Deed. We disagree that the master erred and note Appellants' proportional percentage for profit-sharing and voting purposes actually increased from 15.939% to 15.995% due to the adoption of the Amendment.

As the Regime notes in its brief,

> There is no question that a court has authority pursuant to S.C. Code Ann. § 33-31-160 to modify or dispense with requirements in corporate bylaws of an entity that is not also a horizontal property regime, despite the fact that doing so may be violative of the parties' intent at the time

---

[8] Had the master ordered the Regime to hold a special meeting and vote on the proposed Amendment while leaving the unanimity requirement in place, an absurd result could very well have followed. The likelihood of such is demonstrated by the lengthy history of the co-owners' inability to unanimously agree to the necessary Amendment. This impasse has negatively impacted the Regime's financial health and ability to conduct business, including the handling of necessary maintenance items.

of becoming a member or shareholder of the corporation and may abrogate some right the member or shareholder had based on those documents. This is indeed the very purpose and function of S.C. Code Ann. § 33-31-160. That is, upon the proper showing that it is impractical and impossible for a nonprofit corporation to obtain the consent of its members, to dispense with a default provision which would otherwise apply to a nonprofit corporation's voting requirements, where doing so will or may enable the corporation to continue managing its affairs.

For the reasons discussed here and in Section I, *supra*, we see no improper or otherwise erroneous alteration of Appellants' property rights. The master's order granting the Regime's petition for relief is therefore

**AFFIRMED.**

**THOMAS, J., and VERDIN, A.J., concur.**